UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GRUB STREET, INC.,

      Plaintiff,

  v.

GRUB STREET READS, JESSICA
BENNETT, and LESLIE RAMEY,

      Defendants.

Civil Action No. 12-11860

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

1.     This case concerns the intentional infringement of the distinctive mark GRUB STREET (the "Mark"), owned by Plaintiff Grub Street, Inc. ("Grub Street"), a non-profit organization that provides workshops, seminars, and instruction in the field of writing and publishing.

2.     Grub Street is operated by established professionals in the literary world, including literary agents, authors, and writing teachers.  Its literary advisors include numerous *New York Times* and internationally bestselling authors, such as Anita Shreve (*The Pilot's Wife*), Andre Dubus III (*Townie*, *House of Sand and Fog*), Tom Perrotta (*Election*, *Little Children*), and Susan Orlean (*The Orchid Thief*).

3.     Grub Street instructors are typically published authors, many of whom also teach or have taught writing at well-known colleges and universities, including Boston College, Boston University, Emerson College, Emmanuel College, Harvard University, MIT, Northeastern University, and Simmons College.  Many of their own works also have won competitive national awards and prizes.

4.      Since 2007 Grub Street has awarded an annual National Book Prize to recognize the best authors in the fields of fiction, non-fiction, and poetry.  The Grub Street National Book Prize is perceived in the marketplace as a prestigious award that is recognized as Grub Street's endorsement of high-quality literary works.

5.      Grub Street recently learned of defendant Grub Street Reads, a website that uses the virtually identical mark GRUB STREET READS to promote and solicit business for a paid book review service.  For a fee, Grub Street Reads will review and endorse a book as "Grub Street Reads Endorsed," the purpose of which is to permit its submitting authors to tout its endorsement in their marketing.

6.      Given Grub Street's renown in the literary and writing community, there is little doubt that Grub Street Reads was aware of Grub Street's prior use of and rights in the GRUB STREET Mark at the time that it chose to adopt a confusingly similar mark.  Upon information and belief, Grub Street Reads' adoption of a confusingly similar mark was intentional and designed to free-ride on Grub Street's established goodwill.

7.      Grub Street Reads' conduct constitutes false designation of origin in violation of 15 U.S.C. § 1125(a), statutory and common law trademark infringement and dilution under the laws of the Commonwealth of Massachusetts, common law unfair competition, and unfair competition under Mass. Gen. Laws ch. 93A.

**THE PARTIES**

8.      Grub Street, Inc., is a Massachusetts non-profit corporation with its principal place of business at 162 Boylston Street, 5th Floor, Boston, Massachusetts 02116.

9.      Upon information and belief, Grub Street Reads is a legal entity of unknown type with its principal place of business at 2425 Moonlight Glen, Escondido, California 92026.

10.     Upon information and belief, Jessica Bennett is a resident of California and is the co-founder and operator of Grub Street Reads.

11.     Upon information and belief, Leslie Ramey is a resident of California and is the co-founder and operator of Grub Street Reads.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over defendants because, upon information and belief, defendants regularly solicit and conduct business in Massachusetts, have contracted to supply services in Massachusetts, and have caused harm in Massachusetts.

14.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where (i) a substantial part of the events or omissions giving rise to the claim occurred; and (ii) where Defendants are subject to personal jurisdiction.

## FACTS

### Grub Street's Writing and Publishing Services

15.     Grub Street is a nationally recognized, non-profit corporation that educates and supports writers by offering workshops, seminars, conferences, instruction, and manuscript consulting.  Founded in 1997, Grub Street is the second-largest independent center for creative writing in the United States, and attracts writers from around the country through its many services.

16.     Grub Street was founded by Eve Bridburg, a renowned literary agent who has edited and sold numerous titles, including several *New York Times* bestsellers.  Grub Street's

Artistic Director, Chris Castellani, is an award-winning novelist and a sought-after teacher and speaker who has presented at dozens of writing conferences and colleges and universities, including Harvard, Tufts, The University of Connecticut, Allegheny College, the City University of New York, and Brown.  Grub Street's Board of Directors and Literary Council are comprised of similarly accomplished writers, publishers, teachers, and literary agents, including *New York Times* and internationally bestselling authors.

17.     Grub Street offers numerous writing and publishing services to the writing community.  For instance, Grub Street's Fall 2012 schedule includes over 140 workshops on a variety of topics, including short fiction, the novel, poetry, creative non-fiction, screenwriting, playwriting, the writing life, publishing and promotion, and more.  Grub Street also offers a "Novel Incubator" program, a year-long course taught by two Grub Street instructors for fiction writers who are interested in developing their novels with an eye towards publication and representation by a literary agent.  The program was recently the focus of an article in *Poets & Writers* magazine which touted it as an exciting new model for teaching the novel.  Grub Street also offers a year-long intensive program for nonfiction writers, called the "Nonfiction Career Lab."

18.     Grub Street's courses and seminars draw students and instructors from around the country.  Grub Street workshops routinely sell out well in advance of the workshop dates, and Grub Street receives approximately 75 applications for instructor positions each year.  Grub Street instructors are accomplished and published writers, many of whom also hold teaching positions at colleges or universities around the country.

19.     Grub Street has also offered manuscript consulting services since 2000, drawing clients from around the country.  Many of the consultants who review manuscripts through this

service are also Grub Street instructors, and all are accomplished and published writers.  Grub Street's manuscript service includes an intensive review of the writer's manuscript, followed by written feedback, significant edits, and one-on-one meetings to discuss the writer's work.  Grub Street offers this service to writers around the country, and in the past two years alone, has consulted on manuscripts submitted by writers who reside in California, Connecticut, Illinois, Kansas, Maine, North Carolina, Nebraska, New Hampshire, New Mexico, New York, Rhode Island, Utah, Virginia, and Washington, among others.

20.     For more than a decade, the organization has also hosted an annual national conference called *The Muse and the Marketplace*.  Each year, the conference attracts writers from around the country and from many foreign countries.  The presenting author, agents, and editors also travel to the conference from around the country and the world.  There were over 750 participants at the 2012 *The Muse and the Marketplace* conference, where the speakers included a writer-in-residence at Middlebury College and an independent publisher who lectures on writing and publishing at events and conferences around the world.  In other years, presenting authors have included Ann Patchett, who was recently voted one of the 100 Most Influential People in the World by *Time* Magazine; Chuck Palahnuik, the author of *Fight Club*, which was made into a movie starring Brad Pitt; and Donovan Campbell, author of the *New York Times* bestseller *Joker One*.

### Grub Street's Mark

21.     Grub Street and its predecessor have used the trademark GRUB STREET (the "Mark") to identify the organization and its services, including the workshops, seminars, conference, and National Book Prize discussed above, continuously since 1997.

22.     Grub Street has marketed itself using the Mark in numerous traditional and on-line publications.  For example, the organization advertises its book prize, conferences, and manuscript consulting program in *Poets & Writers* magazine, which has a national circulation of more than 60,000 readers; *Publishers Weekly,* which is read by over 80,000 publishing professionals; and the website for the Association of Writers & Writing Programs, which is visited by 73,000 unique visitors each month.  Grub Street also advertises its conference in Shaw Guides, an online conference listing site with national reach.

23.     In addition to these third-party media outlets, Grub Street has promoted its brand since 1999 through its website, www.grubstreet.org (and formerly www.grubstreet.com).  This website advertises Grub Street's many services and allows visitors to sign up for Grub Street's services, join Grub Street as a member, or make a donation.  From June 2011 to June 2012, the www.grubstreet.org website had more than 110,000 visitors.  Grub Street also has a weekly email newsletter, *The Rag,* which has a circulation of 10,200 people.

24.     Grub Street also operates a blog, www.grubdaily.org, that covers literary activity nationwide.  The blog, which averages over 8,000 visitors each month, features video lectures and articles about writing, publishing, and events at Grub Street.  In addition, Grub Street has a Twitter account (@GrubWriters) and a Facebook page which Grub Street uses to promote its services.

25.     Grub Street also promotes itself by participating in the annual Association of Writers & Writing Programs ("AWP") Conference, which is the largest writing conference in the country.  Grub Street sets up a booth at the AWP Conference each year, and its staff and instructors regularly appear on dozens of conference panels.

26.     Given these widespread uses, GRUB STREET has become a well-known trademark among those in the writing, literary, and publishing fields.  Grub Street has invested substantial amounts of money, time and effort in developing, establishing and promoting the GRUB STREET brand and, as a result, writers and readers exclusively associate the Mark with Grub Street as the source of particular services.  Grub Street has developed substantial goodwill in the Mark, which is a valuable asset of the organization.

27.     Grub Street owns a Massachusetts state registration (No. 75,997), issued August 7, 2012, for the mark GRUB STREET, for use in connection with "Educational services, namely: providing workshops, seminars, conferences, courses of instruction and individual instruction; sponsorship of book awards; electronic publications; career counseling services; manuscript editing services; all in the fields of writing, literature and publishing."  Grub Street also has applied for a federal trademark application for the GRUB STREET word mark (Application No. 85/690,891) for substantially the same services in Class 41.

### The Grub Street National Book Prize

28.     In 2007, Grub Street established its National Book Prize, which is awarded exclusively to writers of poetry, nonfiction, and fiction from outside of New England.  The contest is judged by acclaimed published writers, many of whom are also Grub Street instructors. Writers from all over the country submit their work to be judged, and winning writers have come from Washington, Arizona, Ohio, Washington D.C., North Carolina, New York, Oregon, and Michigan.

29.     The winner of Grub Street's National Book Prize is awarded a cash prize and is invited to read from his or her work and lead a craft class as part of Grub Street's *The Muse and the Marketplace* conference.

30.     A central purpose of the National Book Prize is to identify what Grub Street considers to be the best fiction, non-fiction, or poetry writing that year.  The value of the award lies in the enormous goodwill Grub Street has developed in its brand and its exclusive association with Grub Street as a source of high-quality writing instruction and other writing services.

31.     The value of the National Book Prize as an endorsement is shown by how those who receive the prize (or even become finalists for it), tout the award in their own marketing.  Past winners prominently advertise their participation as a way to promote themselves and their works.

32.     Specifically, many winners of the Grub Street National Book Prize feature the award on their websites, and in doing so, they generate additional publicity and goodwill for Grub Street.  For instance, Eileen Pollack, the winner of the 2012 National Book Prize for fiction, blogged about her award on her website and included a link to Grub Street's website.  *See* http://www.eileenpollack.com/2012/01/grub_street_national_book_priz.html, attached hereto as Exhibit 1.  Similarly, Wendy Call, the Seattle-based writer who won the 2011 National Book Prize in Non-Fiction for her book, *No Word for Welcome*, features the award on her website, www.wendycall.com, which includes a quote about *No Word for Welcome* from the Grub Street Head Juror for the award, who is also a Grub Street instructor.  *See* www.wendycall.com, attached hereto as Exhibit 2; *see also* http://dintywmoore.com/bio/, attached hereto as Exhibit 3; http://www.thedrunkenboat.com/seiferle.htm, attached hereto as Exhibit 4.

33.     Winners of the prize also publicize the award on their social networking sites. The Facebook page for Rahna Reiko Rizzuto prominently identifies her as "Author – Hiroshima

in the Morning: National Book Critics Circle Award Finalist and Grub Street National Book Award winner." *See* http://www.facebook.com/pages/Rahna-Reiko-Rizzuto/250823783282, attached hereto as Exhibit 5.  Similarly, the Facebook page for Vestal McIntyre lists his 2010 National Book Prize under "Awards." *See* http://www.facebook.com/vestal.mcintyre.author/info, attached hereto as Exhibit 6.

34.     The colleges and universities at which Grub Street National Book Prize winners teach also identify the prize as an important achievement.  For example, the University of Washington announced the news on its website when Frances McCue, Honors Program writer-in-residence and instructor, was awarded the 2011 National Book Prize in Poetry. *See* http://www.washington.edu/uaa/textpattern47/tp/features/238/FrancesMcCueBookAwards2011, attached hereto as Exhibit 7.  Similarly, Seattle Pacific University wrote a lengthy blog post to congratulate Gina Ochsner, an SPU faculty member, on her 2011 National Book Prize in Fiction. *See* http://blog.spu.edu/mfa/2011/04/15/gina-ochsner-wins-the-grub-street-book-prize/, attached hereto as Exhibit 8.  Colleges and universities also include the Grub Street National Book Prize when listing honors awarded to their faculty, or in the biographies of faculty members. *See, e.g.*, http://english.gmu.edu/people/sshreve, attached hereto as Exhibit 9 (George Mason University); http://www.english.ohiou.edu/directory/faculty_page/moore/, attached hereto as Exhibit 10 (Ohio University); http://www.plu.edu/english/awards/home.php, attached hereto as Exhibit 11, at 2 (Pacific Lutheran University); http://www.lsa.umich.edu/english/grad/mfa/mfaFacDetail.asp?ID=275, attached hereto as Exhibit 12 (University of Michigan).

35.     The publishers that publish works that have won the prize also feature the award on their own websites, often including a link to the Grub Street website.  For example, Four Way Books, a non-profit literary press based in New York, has featured several posts about the Grub

Street National Book Prize on its blog.  *See* http://fourwaybooks.blogspot.com/2012/01/eileen-pollack-wins-grub-street.html, attached hereto as Exhibit 13; http://fourwaybooks.blogspot.com/2010/06/debra-allbery-wins-grub-street-national.html, attached hereto as Exhibit 14.  Similarly, Amazon.com advertises the winners of the Grub Street National Book Prize in its descriptions of books for sale.  *See* http://www.amazon.com/The-Bled-Frances-McCue/dp/0984069879, attached hereto as Exhibit 15 ("Book Description . . . Winner of the 2011 Grub Street Book Prize.").

36.     Even finishing as a finalist for the Grub Street National Book Prize is recognized as an honor in the writing community.  Scott Nadelson, who was a finalist for the 2012 Grub Street National Book Prize in Fiction, announced this news, along with a link to the Grub Street website, on his website.  *See* http://scottnadelson.com/2012/02/finalist-for-grub-street-prize/, attached hereto as Exhibit 16; *see also* http://www.jessicafranciskane.com/, attached hereto as Exhibit 17 ("Finalist for the Grub Street Book Prize for Fiction").  Similarly, the Jack Ridl Visiting Writers Series of Hope College promotes the fact that Danielle Cadena Deulen, one of its visiting writers for this year, was a finalist for the 2011 Grub Street National Book Prize in Nonfiction.  *See* http://www.hope.edu/vws/2012_2013/Cadena%20Deulen/cadenadeulenharjo.htm, attached hereto as Exhibit 18.

## Grub Street Reads and its Intentional Adoption of a Confusingly Similar Mark

37.     Upon information and belief, Grub Street Reads is a for-profit, commercial organization founded in 2012 by defendants Jessica Bennett and Leslie Ramey, with a business model based on providing paid endorsements to books that are submitted by authors for Grub Street Reads' review.  Upon information and belief, Grub Street Reads and its website are operated by defendants Bennett and Ramey.

38.     According to its website, www.grubstreetreads.com, Grub Street Reads reviews books submitted by authors who pay a fee for its review service, and then gives the "Grub Street Reads Endorsement" or the "Grub Street Endorsement" to those submissions that it deems to meet certain criteria.  Authors who wish to submit their works for Grub Street Reads' review must make an online payment and submit their manuscript through the Grub Street Reads website.  *See* http://www.grubstreetreads.com/submit, attached hereto as Exhibit 19.  The cost of having Grub Street Reads review a manuscript ranges from $14.99 to $74.99.  *See* http://www.grubstreetreads.com/pages/cost, attached hereto as Exhibit 20.

39.     Grub Street Reads uses its website to sell its services to consumers around the country, and conducts regular business through its website, including by entering into agreements with consumers all over the country—including in Massachusetts—to sell its book review services for a fee.  Upon information and belief, Grub Street Reads has purposefully solicited and transacted business in Massachusetts since its launch in July 2012.  In fact, Grub Street Reads has already received at least one submission and payment from a writer who resides in Massachusetts.  *See* http://www.grubstreetreads.com/book/10/What-Stays-in-Vegas, attached hereto as Exhibit 21 (noting that author of a book endorsed by Grub Street Reads resides in Massachusetts).

40.     Grub Street Reads' mark—GRUB STREET READS—is virtually identical and confusingly similar to the GRUB STREET Mark, as it is the same mark, with only one additional non-distinctive word added.  Moreover, Grub Street Reads often refers to itself as simply "Grub Street," which is identical to the GRUB STREET Mark.  In fact, the headline "THE BEST INDIE AUTHORS COME FROM GRUB STREET" is prominently displayed throughout the Grub Street Reads website, and the website includes a page entitled "What The Grub Street

Endorsement Means." *See, e.g.*,  http://www.grubstreetreads.com/pages/bookreviews, attached hereto as Exhibit 22.

41.     Grub Street Reads uses the GRUB STREET READS and GRUB STREET marks as more than the name of its company.  It also uses the marks in a variety of contexts and formats throughout its business that are similar to the ways in which Grub Street uses its GRUB STREET Mark.

42.     In particular, Grub Street Reads uses the GRUB STREET READS and GRUB STREET marks to endorse books—just like, as described above, Grub Street uses its GRUB STREET Mark in conjunction with its National Book Prize, which serves as an endorsement from Grub Street and is widely promoted as such by Grub Street and those in the writing community.

43.     The difference between defendant Grub Street Reads' use of the marks, and Grub Street's use of the Mark, is the unfettered willingness with which Grub Street Reads awards its endorsements.  Grub Street Reads claims that it does not "endorse everyone," but suggests that almost half of the paid submissions it receives are endorsed.  *See* http://www.grubstreetreads.com/pages/writers, attached hereto as Exhibit 23.  Indeed, a review of the Grub Street Reads website indicates that dozens of books have been endorsed since the website launched.  In contrast, Grub Street awarded only three National Book Prizes each year prior to 2012—one for fiction, one for non-fiction, and one for poetry—and beginning in 2012, Grub Street awards only one National Book Prize each year.

44.     Writers who receive endorsements from defendant Grub Street Reads feature those endorsements on their websites—just like winners of the Grub Street National Book Prize. For instance, one author announced on her website that her book "has met the high quality

standards set by Grub Street Reads and earned that organization's esteemed endorsement."  *See* http://michelshriver.com/presspublicity/gsrendorsement/, attached hereto as Exhibit 24; *see also* http://lindahawley.com/Home.php, attached hereto as Exhibit 25; http://www.prlog.org/11950939-crimson-cream-receives-grub-street-reads-book-endorsement.html, attached hereto as Exhibit 26.

45.     In announcing their endorsements from defendant Grub Street Reads, however, many writers refer to the endorsement as being from "Grub Street"—thereby furthering the confusion between the two marks.  For instance, Laurie Boris announced on her website that her book was "a Grub Street Great."  *See* http://laurieboris.com/pressroom/press-releases-2/drawing-breath-a-grub-street-great/, attached hereto as Exhibit 27.  Similarly, Libby Broadbent announced on her website that her book had been "Grub Street Endorsed!"  *See* http://libbybroadbent.com/2012/08/03/that-thing-that-happened-endorsed/, attached hereto as Exhibit 28.

46.     Grub Street Reads also markets itself to the same literary community that Grub Street has served exclusively as GRUB STREET for fifteen years.  Grub Street Reads and Grub Street both offer writers feedback on their works.  Grub Street Reads circulates an email newsletter, *The Grub Street Reads Gazette*, similar to Grub Street's own email newsletter, *The Rag*, and Grub Street Reads also has a Twitter account.  Grub Street Reads' newsletter and its Twitter feed purport to educate and inform writers about best practices in editing, finding agents, publishing works, book promotion, and other current topics in the writing and publishing fields, just as Grub Street does through its own newsletter, blog, and Twitter feed.  Grub Street Reads also purports to serve as a resource for consumers to use in identifying quality literary works— the same function that the Grub Street National Book Prize has exclusively served for five years.

In fact, Grub Street Reads has recently announced its own writing contest, the "Grub Street Reads Flash Fiction" Contest.

47.    Upon information and belief, Grub Street and Grub Street Reads advertise through overlapping marketing channels insofar as they use the Internet and print media to advertise their services.  In addition, both parties are routinely the topic of discussion on Internet blogs and popular websites used by writers and readers.

48.    Upon information and belief, given the renown of the GRUB STREET Mark, Grub Street Reads was aware of the Mark and adopted a confusingly similar mark with the intent to free-ride on the consumer association between the Mark and Grub Street, and the enormous goodwill Grub Street has developed in the Mark.

49.    Even absent the renown of the GRUB STREET Mark, upon information and belief, Grub Street Reads was aware of Grub Street and its Mark: both parties compete in a small market, offering the same services.  Indeed, the Grub Street Reads website contains a disclaimer stating that "Grub Street Reads is not affiliated with Grub Street writing community."  While such a disclaimer is unlikely to avoid trademark confusion where, as here, the competing marks are virtually identical, the use of this disclaimer also demonstrates Grub Street Reads' awareness of the GRUB STREET Mark, as well as the likelihood of consumer confusion.

50.    Grub Street never authorized Grub Street Reads to use the GRUB STREET Mark or any confusingly similar marks.

51.    Grub Street Reads' use of a mark that is virtually identical to the GRUB STREET Mark, on or in connection with services that are so closely related to Grub Street's goods, is likely to cause confusion, mistake, and deception among Grub Street's customers and potential customers, vendors, and the general public, and to cause individuals and businesses to

erroneously believe that Grub Street has an affiliation, connection, or association with Grub Street Reads, or that Grub Street has sponsored or approved the use of its Mark by Grub Street Reads, all to the irreparable harm and detriment of Grub Street and the substantial goodwill it has developed in the GRUB STREET Mark.

52.     In addition to damage to Grub Street's goodwill, Grub Street Reads' adoption of a confusingly similar mark is likely to cause damage to Grub Street's reputation and adversely affect Grub Street's ability to compete.  Since it was established, the Grub Street National Book Prize, which uses the GRUB STREET Mark, has acted as a means for Grub Street to endorse the select few works that it has deemed to be exceptional.  Grub Street Reads has now used a confusingly similar mark to promote its paid book endorsement service, which endorses almost half of all the submissions received by Grub Street Reads.  To date, Grub Street Reads—which, upon information and belief, only launched its website in July 2012—has already endorsed dozens of books.  Grub Street Reads' business model of effectively selling its endorsement affects Grub Street's goodwill and dilutes the distinctive quality of the GRUB STREET Mark.

53.     Grub Street Reads furthers the potential for consumer confusion by consistently referring to itself as "Grub Street."  For example, the following headline is prominently displayed throughout the Grub Street Reads website: "THE BEST INDIE AUTHORS COME FROM GRUB STREET."  *See, e.g.*, http://www.grubstreetreads.com/pages/bookreviews, attached hereto as Exhibit 22; http://www.grubstreetreads.com/pages/writers, attached hereto as Exhibit 23.  The website also contains links to "Grub Street Greats" and "Grub Street Blog," and includes a page entitled "What the Grub Street Endorsement Means."  *See* http://www.grubstreetreads.com/pages/bookreviews, attached hereto as Exhibit 22.

54.     Moreover, consumers in the marketplace refer to Grub Street Reads as "Grub Street," and have noted the similarity between the two marks.  *See* http://wwwburiedinbooks.blogspot.com/2012/07/grub-street-reads-what-do-you-think.html, attached hereto as Exhibit 29, at 11, 14.  And, as noted above, authors who have received endorsements from defendant Grub Street Reads—*not* from Grub Street—have announced on their websites that they are "Grub Street Endorsed!"  *See* http://libbybroadbent.com/2012/08/03/that-thing-that-happened-endorsed/, attached hereto as Exhibit 28.

55.     In light of the foregoing, Grub Street Reads' use of the GRUB STREET READS and GRUB STREET marks is likely to cause confusion and irreparable harm to Grub Street, including confusion among Massachusetts residents.  As a result, its use of this mark, and any other confusingly similar mark, should be preliminarily and permanently enjoined.

## COUNT I
### (False Designation of Origin – 15 U.S.C. § 1125(a))

56.     Grub Street repeats and realleges the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57.     As described above, Grub Street is the owner of the GRUB STREET Mark.

58.     The GRUB STREET Mark is distinctive and has otherwise acquired secondary meaning among consumers, who exclusively associate the GRUB STREET Mark with Grub Street.

59.     Grub Street's ownership and use in commerce of the GRUB STREET Mark predates the use by Grub Street Reads of a confusingly similar mark.

60.     Upon information and belief, given the fame of Grub Street and its GRUB STREET Mark, Grub Street Reads' conduct is willful and intentional and intended to free-ride off of the goodwill associated with the GRUB STREET Mark.

61.     Grub Street Reads uses the GRUB STREET READS and GRUB STREET marks in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

62.     Grub Street Reads' use in commerce of the GRUB STREET READS and GRUB STREET marks, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Grub Street Reads with Grub Street and/or as to the origin, sponsorship, or approval by Grub Street of Grub Street Reads' goods, services, or commercial activity, and will irreparably harm Grub Street and the goodwill it has developed in the GRUB STREET Mark.

63.     As a direct and proximate result of Grub Street Reads' violation of 15 U.S.C. § 1125(a), Grub Street has been and will continue to be damaged.

64.     Upon information and belief, Grub Street Reads has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Grub Street as a result of its wrongful conduct.

65.     Grub Street Reads' conduct is causing and will continue to cause Grub Street to suffer irreparable harm, and unless Grub Street Reads is restrained, Grub Street will continue to be so damaged, because it has no adequate remedy at law.

### COUNT II
### (Trademark Infringement—Mass. Gen. Laws ch. 110H §§ 12 and 14)

66.     Grub Street repeats and realleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.     As described above, Grub Street is the owner of a Massachusetts trademark registration No. 75,997 for the GRUB STREET Mark.

68.     Grub Street's ownership and use in commerce of the GRUB STREET Mark predates the use by Grub Street Reads of the GRUB STREET READS and GRUB STREET marks.  Grub Street's Massachusetts registration of the GRUB STREET Mark also predates the use by Grub Street Reads of the GRUB STREET READS and GRUB STREET marks.

69.     Upon information and belief, given the fame of Grub Street and its GRUB STREET Mark, Grub Street Reads' conduct is willful and intentional and intended to free-ride off of the goodwill associated with the GRUB STREET Mark.  Grub Street Reads is and was at all relevant times at least constructively aware of Grub Street's prior use, ownership, and registration of the GRUB STREET Mark, and Grub Street Reads' conduct with respect to that mark is therefore also willful and intentional.

70.     Grub Street Reads uses its GRUB STREET READS and GRUB STREET marks in Massachusetts in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

71.     Grub Street Reads' use of the GRUB STREET READS and GRUB STREET marks, as described above, constitutes trademark infringement in violation of Mass. Gen. Laws ch. 110H, §§ 12 and 14, in that it is without Grub Street's consent and is likely to cause confusion, mistake, and/or deception with respect to Grub Street's registered trademark, all to the irreparable injury of Grub Street and the goodwill it has developed in the GRUB STREET Mark.

72.     As a direct and proximate result of Grub Street Reads' violations of Mass. Gen. Laws ch. 110H, §§ 12 and 14, Grub Street has been and will continue to be damaged.

73.     Upon information and belief, Grub Street Reads has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Grub Street as a result of its wrongful conduct.

74. Grub Street Reads' conduct is causing and will continue to cause Grub Street to suffer irreparable harm and, unless Grub Street Reads is restrained, Grub Street will continue to be so damaged, because it has no adequate remedy at law.

## COUNT III
### (Trademark Dilution—Mass. Gen. Laws ch. 110H § 13)

75. Grub Street repeats and realleges the allegations contained in paragraphs 1 through 74 above as if fully set forth herein.

76. As described above, Grub Street is the owner of the famous GRUB STREET Mark.

77. The GRUB STREET Mark is distinctive and has acquired secondary meaning among consumers, who exclusively associate the GRUB STREET Mark with Grub Street.

78. Grub Street's ownership and use in commerce of the GRUB STREET Mark predates the use by Grub Street Reads of a confusingly similar mark.

79. Upon information and belief, given the fame of Grub Street and its GRUB STREET Mark, Grub Street Reads' conduct is willful and intentional and intended to free-ride off of the goodwill associated with the GRUB STREET Mark.

80. Grub Street Reads' use in commerce of the confusingly similar GRUB STREET READS and GRUB STREET marks, as described above, constitutes common law and statutory dilution in that it is without Grub Street's consent, and creates and will continue to create a likelihood of injury to Grub Street's business reputation and/or a likelihood of dilution of the distinctive quality of the GRUB STREET Mark.

81. As a direct and proximate result of Grub Street Reads' dilution of the GRUB STREET Mark, Grub Street has been damaged and will continue to be damaged.

82.     Grub Street Reads' conduct is causing and will continue to cause Grub Street to suffer irreparable harm and, unless Grub Street Reads is restrained, Grub Street will continue to be so damaged, because it has no adequate remedy at law.

**COUNT IV**
**(Common Law Trademark Infringement)**

83.     Grub Street repeats and realleges the allegations contained in paragraphs 1 through 82 above as if fully set forth herein.

84.     As described above, Grub Street is the owner of the famous GRUB STREET Mark.

85.     The GRUB STREET Mark is distinctive and has acquired secondary meaning among consumers, who exclusively associate the GRUB STREET Mark with Grub Street.

86.     Grub Street's ownership and use in commerce of the GRUB STREET Mark predates the use of Grub Street Reads of a confusingly similar mark.

87.     Upon information and belief, given the fame of Grub Street and its GRUB STREET Mark, Grub Street Reads' conduct is willful and intentional and intended to free-ride off of the goodwill associated with the GRUB STREET Mark.

88.     Grub Street Reads' use in commerce of the confusingly similar GRUB STREET READS and GRUB STREET marks, as described above, constitutes common law trademark infringement in that it is without Grub Street's consent and creates a likelihood of confusion as to source.

89.     As a direct and proximate result of Grub Street Reads' common law trademark infringement, Grub Street has been damaged and will continue to be damaged.

90.     Upon information and belief, Grub Street Reads has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Grub Street as a result of its wrongful conduct.

91.     Grub Street Reads' conduct is causing and will continue to cause Grub Street to suffer irreparable harm and, unless Grub Street Reads is restrained, Grub Street will continue to be so damaged, because it has no adequate remedy at law.

## COUNT V
### (Common Law Unfair Competition—Passing Off)

92.     Grub Street repeats and realleges the allegations contained in paragraphs 1 through 91 above as if fully set forth herein.

93.     As described above, Grub Street is the owner of the famous GRUB STREET Mark.

94.     The GRUB STREET Mark is distinctive and has acquired secondary meaning among consumers, who exclusively associate the GRUB STREET Mark with Grub Street.  Grub Street has developed substantial goodwill in the Mark, which is a valuable asset of the organization.

95.     Grub Street's ownership and use in commerce of the GRUB STREET Mark predates the use of Grub Street Reads of a confusingly similar mark.

96.     By using the confusingly similar GRUB STREET READS and GRUB STREET marks in marketing its services, Grub Street Reads is likely to deceive, mislead, or induce consumers to believe that its services are actually those of Grub Street's, or that its services are sponsored or approved by Grub Street.

97.     Upon information and belief, given the fame of Grub Street and its GRUB STREET Mark, Grub Street Reads' conduct is willful and intentional, and intended to induce and

create consumer confusion, and free-ride off of the goodwill associated with the GRUB STREET Mark.

98.     Grub Street Reads' acts, conduct, and practices described above, including without limitation the use of the confusingly similar GRUB STREET READS and GRUB STREET marks in connection with the promotion, sale, or licensing of services in Massachusetts, creates a likelihood of consumer confusion as to the source of its goods or services, thereby damaging the goodwill that Grub Street has developed in the Mark.

99.     Grub Street Reads' use of the GRUB STREET READS and GRUB STREET marks constitutes unfair competition.

100.    Grub Street Reads' conduct is causing and will continue to cause Grub Street to suffer irreparable harm and, unless Grub Street Reads is restrained, Grub Street will continue to be so damaged, because it has no adequate remedy at law.

## COUNT VI
### (Unfair Competition—Mass. Gen. Laws ch. 93A)

101.    Grub Street repeats and realleges the allegations contained in paragraphs 1 through 100 above as if fully set forth herein.

102.    Grub Street and Grub Street Reads are persons engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 11.

103.    Grub Street Reads' acts, conduct, and practices described above occurred and are occurring primarily and substantially within the Commonwealth of Massachusetts.

104.    Grub Street Reads' acts, conduct, and practices described above, including without limitation the use of the confusingly similar GRUB STREET READS and GRUB STREET marks in connection with the promotion, sale, or licensing of services in

Massachusetts, constitutes unfair methods of competition and/or unfair or deceptive acts or practices, which are unlawful under Mass. Gen. Laws ch. 93A.

105.    Grub Street Reads' unfair and deceptive conduct was intentional, knowing, and willful, and has caused substantial harm to Grub Street.

106.    As a direct and proximate result of Grub Street Reads' violations of Mass. Gen. Laws 93A, Grub Street has been damaged and will continue to be damaged, and is entitled to treble damages, plus attorneys' fees and costs.

****

## **PRAYERS FOR RELIEF**

WHEREFORE, Grub Street respectfully requests the following relief:

A.      That this Court preliminarily and permanently enjoin Grub Street Reads, its

employees, agents, servants, and all in privity with it, from using any marks

confusingly similar to the GRUB STREET Mark, including, but not limited to the

GRUB STREET READS and GRUB STREET marks, or any derivatives thereof

or any designs similar thereto, in commerce, including as a domain name URL;

B.      That this Court award Grub Street profits and compensatory damages in an

amount to be determined at trial;

C.      That this Court award Grub Street treble damages;

D.      That this Court award Grub Street its attorneys' fees and costs; and

E.      That this Court award Grub Street such other and further relief that this Court

deems just and proper.

****

## JURY DEMAND

Grub Street demands a trial by jury of all claims so triable.


Respectfully submitted,

GRUB STREET, INC.

By its attorneys,


/s/ Mark S. Puzella
Mark S. Puzella (BBO# 644850)
Yvonne W. Chan (BBO# 669223)
Goodwin Procter LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax.:  617.523.1231

Dated:   October 4, 2012